IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Case No. 1:14-CR-0221-001 |
| **v.** : | |
| **JOSEPH RAMON GALLARDO** : | Sylvia H. Rambo |

## M E M O R A N D U M

Before the court is a motion by Defendant, Joseph Ramon Gallardo, requesting the court to grant his release on bail pending sentencing (Doc. 35), which is opposed by the Government. After careful consideration of this matter, the court finds that no condition or combination of conditions will reasonably assure the safety of the community and the appearance of Defendant at sentencing.

**I.      Background**

For purposes of the instant motion, the court briefly summarizes the relevant background.

Between 2006 and 2009, Defendant was a registered investment adviser representative with two independent brokerage houses, Investors Capital Corporation and brokersXpress. (Doc. 17, ¶ 4.) In that capacity, Defendant perpetuated a fraudulent scheme wherein he solicited and obtained millions of dollars in client funds to invest into his personal real estate venture, Blue Meadow Group LLC, Real Estate Investment Trust ("Blue Meadow Group"), which, unbeknownst to his clients, was not a registered real estate investment trust. (*Id.* at ¶¶ 4-5, 8.) Defendant induced his clients to invest in this so-called trust by promising them varying

guaranteed rates of return, falsely representing that their money was invested in and protected by real estate, and falsely representing the number, dollar value, and profitability of the real estate holdings. (*Id.* at ¶ 6.) Defendant further misled his clients by making various payments to them that he falsely characterized as returns on profitable real estate investment activity. (*Id.*) In addition to using investor funds to pay purported interest to other investors, Defendant also used those funds to finance his own risky and unprofitable day trading activity, to pay personal living expenses, and to purchase a Lukoil gas station and convenience store franchise, which experienced steady substantial losses. (*Id.* at ¶¶ 8, 9,15.) The application submitted by Defendant to obtain the franchise included false personal financial statements and failed to report Defendant's use of funds received from investors. (*Id.*)

In April 2009, the Pennsylvania Securities Commission ("PSC") formally advised Defendant that it was investigating Blue Meadow Group, in response to which Defendant falsely stated that he had no interest or ownership in the group and that he never advised his clients to invest therein. (*Id.* at ¶ 10.) Defendant then induced clients to corroborate his false assertions to the PSC in writing. (*Id.*) In July 2009, the PSC issued a Summary Order to Cease and Desist against Defendant, ordering him to stop offering or selling the investment opportunity in Pennsylvania. (*Id.* at ¶ 12.) In December 2009, the Financial Investment Regulatory Authority ("FINRA") barred Defendant's association with any FINRA member. (*Id.*)

Nevertheless, between November 2009 and July 2012, Defendant continued to solicit and receive investment funds from clients under the guise of

Income Property Group, LLC.  (*Id.* at ¶ 13.)  Defendant also encouraged at least two clients to mortgage their personally-owned homes to acquire additional funds to invest with him.  Defendant submitted the mortgage applications on their behalf, which he supplemented with false tax returns and asset verifications in the applicants' names.  (*Id.* at ¶ 14.)

Following an investigation which was prompted by a report filed by the daughter of one of Defendant's elderly victims, a criminal complaint was filed against Defendant on September 30, 2013, and Defendant was arrested the same day.  (*U.S. v. Gallardo*, Crim. No. 1:13-mj-0093, Doc. 1.)  On October 1, 2013, the Government filed a motion requesting Defendant's detention pending sentencing.  Following a detention hearing before Magistrate Judge Susan Schwab, Judge Schwab ordered Defendant detained, finding that no condition or combination of conditions of release will reasonably assure the appearance of Defendant and the safety of another person or the community.  (*Id.* at Doc. 14.)  Defendant has been continuously confined since the date of his arrest.

A one-count Information was filed against Defendant on September 2, 2014, charging him with mail fraud from June 2006 through September 2013, in violation of 18 U.S.C. § 1341.  (Doc. 1.)  Defendant pled guilty to the Information on September 23, 2014.  (*See* Docs. 9 & 10.)

On February 10, 2015, the probation officer filed a pre-sentence investigation report ("PSR") (Doc. 17), wherein she assigned Defendant a base offense level of 7 pursuant to Section 2B1.1(a)(1) of the United States Sentencing Guidelines ("U.S.S.G.").  Based upon the Government's representation that Defendant received investment funds totaling $2,328,829.69 from eleven investors,

and that ten of those investors suffered individual losses of $10,000 to $926,500, for a total loss of $1,802,170.22 (*id.* at ¶ 8), the probation officer added sixteen levels under U.S.S.G. § 2B1.1(b)(1)(I) because the amount of the loss was more than $1 million and less than $2.5 million. Because the offense involved ten or more victims, she assigned two levels under U.S.S.G. § 1.1(b)(2)(A). Pursuant to U.S.S.G. § 2B1.1(b)(9)(C), she assigned two levels because Defendant continued to defraud investors after the PSC issued a cease and desist order. She added an additional two levels under U.S.S.G. § 2B1.1(b)(10)(C) for the use of sophisticated means. Because the offense involved a violation of securities law and Defendant was an investment advisor representative, she applied an additional four-level increase under U.S.S.G. § 2B1.1(b)(19)(A). The probation officer calculated the resulting offense level as 33. Following a three-level reduction for acceptance of responsibility, Defendant's total offense level was 30.

        Defendant filed objections to the PSR on January 12, 2015, wherein he objected to the amount of the loss and the enhancements for ten or more victims, the use of sophisticated means, and his status as an investment advisor. (Doc. 18, pp. 4-9 of 9.) Following a conference with the attorneys in this matter, the court scheduled an evidentiary hearing for June 15, 2015, in order to provide Defendant with sufficient time to gather factual data on the amount of the loss. (*See* Doc. 22.) An evidentiary hearing was held on that date, and the balance of the hearing is set for July 28, 2015.

        On June 25, 2015, Defendant filed the instant motion for review of the detention order. (Doc. 35.) In the motion, Defendant requests to be placed on

release in order to facilitate his participation in preparing for the evidentiary hearing, arguing, in pertinent part, as follows:

> This litigation has involved the review of a substantial number of financial and other records which required [Defendant]'s direct participation. [Defendant]'s participation in this effort has been unnecessarily complicated by the complained-of detention order. Furthermore, discovery of additional financial and other records necessary to support [Defendant]'s position on objections to the PSR is ongoing. Some of this additional material[ ] is available from the Postal Inspection Service. Other material, however, must be obtained from third parties. The accumulation and review of this information requires [Defendant]'s personal attention and active participation.

(*Id.*)

The court held a hearing on Defendant's motion on July 8, 2015, at which Christy Fawcett, Esquire, appeared on behalf of the Government and Joshua Locke, Esquire, appeared on behalf of Defendant. At the hearing, the Government presented the testimony of Inspector Michael Hartman, and argued, *inter alia*, that there are no less restrictive conditions that can be imposed to secure Defendant's appearance and that Defendant poses a risk of financial harm to the community. Inspector Hartman emphasized that all of Defendant's victims are over the age of 65 and that the daughter of two of the victims has expressed her concern that her parents remain susceptible to Defendant's fraudulent acts. Defendant did not call any witnesses to testify on his behalf, but argued primarily that less-restrictive pretrial conditions can be imposed to secure his appearance. Defendant also argued that he poses no risk of physical harm to anyone and is not only unlikely to be but also unable to be a recidivist in the short time he would be released on bail. No third-party custodians were present at the hearing.

**II.** **<u>Discussion</u>**

The release or detention of a criminal defendant pending sentencing is governed by 18 U.S.C. § 3143(a), which creates a presumption in favor of detention. *United States v. Lieberman*, 496 F. Supp. 2d 584, 586 (E.D. Pa. 2007); *United States v. Georgiou*, Crim. No. 09-88, 2010 WL 701892, *1 (E.D. Pa. Mar. 1, 2010). Pursuant to 18 U.S.C. § 3143(a)(1),[1] a defendant may be released pending sentencing only if he proves by clear and convincing evidence that he is "not likely to flee or pose a danger to the safety of any other person or the community." *Georgiou*, 2010 WL 701892 at *1-2; *United States v. Smith*, 34 F. Supp. 3d 541, 544 (W.D. Pa. 2014) (citing *United States v. Strong*, 775 F.2d 504, 505 (3d Cir. 1985)).

Defendant has failed to meet his burden of showing by clear and convincing evidence that he is not a flight risk or a danger to the community. While the court has little concern that Defendant will pose a physical danger to anyone, the court is concerned, based on the testimony of Inspector Hartman and Defendant's propensity to defraud the elderly—a propensity that continued even after he was terminated from his employment and received a cease and desist letter from PSC—that Defendant will pose a financial danger to the community. *See United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) ("A danger to the

---

[1] 18 U.S.C. § 3143(a)(1) provides:

Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of a sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

community does not only include physical harm or violent behavior. The concept of 'safety' may include non-physical harm."); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (holding that "[a] defendant's propensity to commit crime generally, even if the resulting harm would not be solely physical, may constitute sufficient risk of danger to come within contemplation of [the Bail Reform Act]").[2]

Perhaps even more concerning to the court, however, is Defendant's risk of flight.[3] Although Defendant's parents have offered to act as his third-party custodians, the purpose of which is to influence the defendant not to flee, they are elderly, they do not have driver's licenses, and they reside in New Jersey, which is outside of this court's jurisdiction. Furthermore, without the opportunity to engage in a dialogue with them, the court cannot be certain that Defendant's parents have the kind of relationship with him that would make them meaningful third-party custodians. *United States v. Zhang*, Crim. No. 12-498, 2014 WL 5285928, *4 (E.D. Pa. Oct. 16, 2014) (explaining that in order for a custodian to exercise the necessary "moral suasion" over the defendant, he or she must have a substantial relationship with him) (citations omitted); *United States v. Batista*, 163 F. Supp. 2d 222, 224 (S.D.N.Y. 2001) (listing factors to evaluate a potential surety's capacity for "moral suasion" as including "the strength of the tie between the suret[y] and defendant (i.e.

---

[2] In assessing a defendant's danger to the community, courts typically consider "the nature and circumstances of the crime, the pre-sentence report, the defendant's prior criminal record, pending charges and any other factors indicative of the defendant's propensity to commit crime generally or otherwise to endanger the community." *Schenberger*, 498 F. Supp. at 742 (citing *Provenzano*, 605 F.2d at 96).

[3] Factors courts typically consider in assessing a defendant's risk of flight include "the nature and circumstances of the offense, the defendant's family ties, employment status and financial resources, the defendant's character and mental condition, the length of defendant's residence in the community, any prior criminal record and any flight or failures to appear in court proceedings." *Id.* (citations omitted).

family or close friend, close or estranged), the defendant's roots in the community, and the regularity of contact between suret[y] and defendant"). As it stands, the court has little confidence in Defendant's parents' ability to exercise "moral suasion" over him and finds it more likely that Defendant will exercise influence over them, as he has proven his keen ability to manipulate the elderly.

Overall, Defendant has not lived in New Jersey since 2004 and presumably has few community contacts there. His actions have greatly strained his relationship with his soon-to-be ex-wife and daughter. He is a citizen of Cuba with a green card and can therefore travel freely into Canada and Mexico without a passport. He has used at least two social security numbers and falsified numerous documents. Although it is unlikely that he retains financial resources at this time given his pending divorce and incarceration, it is not far fetched to believe that Defendant is willing and able to obtain, albeit fraudulently, significant financial assets. It is unlikely that his elderly parents will serve as effective third-party custodians. These circumstances suggest a substantial risk that Defendant will fail to appear for sentencing.

### III.    Conclusion

Accordingly, Defendant has not shown by clear and convincing evidence that he is not likely to flee or to pose a danger to the community. The court will therefore deny Defendant's motion for bail pending sentencing.

An appropriate order will issue.

                                                                                 s/Sylvia H. Rambo
                                                                               United States District Judge

Dated: July 13, 2015.